IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQT GATHERING, LLC and EQUITRANS, L.P. | : CIVIL ACTION :<br>:<br>: No.: 2:18-cv-00874<br>:<br>: The Honorable Mark R. Hornak<br>:<br>:<br>: *ELECTRONICALLY FILED*<br>: |
| Plaintiffs, | |
| v. | |
| TRIAD ENGINEERING, INC., | |
| Defendant. | |

**AMENDED COMPLAINT**

AND NOW, come the Plaintiffs, EQT Gathering, LLC and Equitrans, L.P., by and through their counsel, BURKE CROMER CREMONESE, LLC, John B. Cromer, Esquire, and Michael J. Cremonese, Esquire, and file the following Amended Complaint in Civil Action:

1. Plaintiff, EQT Gathering, LLC f/k/a Equitable Gathering, LLC (hereinafter "EQT Gathering"), is a Delaware limited liability company with its principal place of business at EQT Plaza, 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania 15222.

2. Equitable Gathering, LLC, changed its name to EQT Gathering, LLC, effective March 31, 2009.

3. Plaintiff Equitrans, LP (hereinafter "Equitrans"), is a Pennsylvania limited partnership with its principal place of business at EQT Plaza, 625 Liberty Avenue, Suite 2000, Pittsburgh, Pennsylvania 15222.

4. Defendant, Triad Engineering, Inc. (hereinafter "Triad"), is a West Virginia company with a principal place of business in Scott Depot, WV.

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332 as the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00.

6. Venue is appropriate in this Court under 28 U.S.C. §1391 because a substantial part of the events giving rise to this Complaint occurred in Indiana and/or Armstrong County, Pennsylvania and the contract between the parties sets forth that Triad agrees to the exclusive jurisdiction of this Court.

7. EQT Gathering and Triad entered into a Consulting/Professional Services Agreement (hereinafter "PSA"), effective on May 29, 2008. The PSA is attached hereto as Exhibit "1".

8. Within the PSA, Triad agreed to perform as requested by EQT Gathering in accordance with individual Purchase Orders or other Contract Documents EQT Gathering may elect to issue to Triad.

9. Triad represented that it possessed the experience, skills and abilities to satisfactorily perform its services.

10. Triad agreed to perform its services with due diligence in a good and workmanlike manner in accordance with the standards, practices and procedures which would be reasonably expected from an experienced service provider in the areas anticipated by the PSA.

11. Triad agreed to be responsible for the technical accuracy of its services and documents resulting therefrom and agreed that Plaintiffs shall not be responsible for discovering their deficiencies.

12. Triad accepted that it was familiar or had familiarized itself with the local conditions with respect to the performance of its services.

13.     Pursuant to the PSA, EQT Gathering reserved it right to assign, in whole or in part, the PSA, any Purchase Order, and any other related Contract Documents to any affliated or related companies.

14.     Pursuant to the PSA, EQT Gathering assigned its right to issue a Purchase Order to an affiliated or related company, Allegheny Valley Connector, LLC (hereinafter "AVC").

15.     AVC, effective November 17, 2016, merged with and into Equitrans.  Equitrans, together with EQT Gathering, are the Plaintiffs.

16.     AVC issued Purchase Order 132038 OC to Triad on July 15, 2015 pursuant to the PSA.  Triad accepted the Purchase Order on or about the same date.  The Purchase Order is attached hereto as Exhibit "2".

17.     Pursuant to the Purchase Order, Triad was obligated to provide a subsurface exploration, to include drilling geotechnical borings, for the TP-371 Pipeline Replacement Project in Indiana County, Pennsylvania.

18.     Incorporated within the Purchase Order was Triad's proposal of July 13, 2015, (Proposal No. 02-15-0086) in which Triad agreed to fill and grout all coring boreholes.  Triad's proposal is attached hereto as Exhibit "3".

19.     The TP-371 pipeline replacement project included six horizontal direction drill borings situated along an 18-mile stretch of the existing TP-371.

20.     Crossing No. 4 of the TP-371 pipeline replacement project was approximately 1.15 miles in length and drilled under gently sloping farmland, wetlands, streams, and railroad tracks.

21.     In or about August/September 2015, Triad drilled geotechnical borings at three locations along the proposed Crossing No. 4 area and prepared a "Report of Geotechnical Exploration."  The "Report of Geotechnical Exploration" is attached hereto as Exhibit "4".

22. On September 23, 2016, drilling commenced for a pilot hole in the area of Crossing No. 4 for one of the six horizontal direction drill wells.

23. On October 10, 2016, an inadvertent return of bentonite drilling mud to the surface occurred during pilot hole drilling.

24. The inadvertent return was located just north of a stream and railroad tracks near a drip tank for the existing TP-371 pipeline.

25. The inadvertent return continued at this location throughout the horizontal drilling process.

26. The TP-371 pipeline was successfully pulled through the horizontal direction drill boring on March 15, 2017, at which time the inadvertent return stopped flowing.

27. On April 1, 2017, it was discovered that the inadvertent return was again flowing with the presence of bentonite clay from drill mud.

28. Upon inspection and discovery, Triad boring B-4.2 was not located correctly on the Triad location map since the location would have been in the middle of a wetland with standing water.

29. Upon further review and discovery, the actual boring location for boring B-4.2 was on the gravel pad near the existing TP-371 drip tank, which was in the same general location as the inadvertent return.

30. In Triad's "Report of Geotechnical Exploration", it states that all the geotechnical boreholes "were backfilled upon completion of the drilling with auger cuttings" as opposed to filling the boreholes with grout.

31. On June 7, 2017, excavation was conducted near and around the inadvertent return location, boring B-4.2, and a cement plug was found.

32. On June 9, 2017, as the inadvertent return continued to flow, the area was excavated further to explore the depth of the cement plug at boring B-4.2.

33. The cement plug only extended to approximately five feet below ground surface and was only three feet in total length.

34. On June 13, 2017, drilling was conducted to align with the previously drilled boring B-4.2 auger hole and was drilled to the top of bedrock.

35. No cement or indications of grout were found.

36. A core barrel sampler was then used to drill from 25 to 30 feet and no cement or rock was present in the core barrel upon retrieval.

37. Attempts to core continued to a total depth of 72 feet with no cement, rock or grout recovered from the hole.

38. Efforts were then undertaken to grout the hole and a complete seal was achieved with no further evidence of any inadvertent return.

39. Due to Triad's failure to properly grout boring B-4.2 an inadvertent return occurred.

40. As a direct, proximate and foreseeable result of Triad's breach of its duties in failing to grout borehole B-4.2, Plaintiffs have incurred damages exceeding $2 million for the clean-up of the inadvertent return, delay of the TP-371 project occasioned by the inadvertent return, and the sealing of borehole B-4.2.

## **COUNT I**

41. Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

42. Triad had a duty to perform grouting of its boreholes according to the terms and representations of the PSA, Purchase Order, and Triad's proposal.

43. Triad did not perform the necessary grouting of borehole B-4.2.

44. Triad admitted it did not perform the necessary grouting of borehole B-4.2.

45. Triad failed to use its best skill and judgment in discharging its obligations in a good and workmanlike manner free from defects.

46. As a result of Triad's breach of its obligations under the PSA and Purchase Order, an inadvertent return occurred at borehole B-4.2.

47. As a direct, proximate and foreseeable result of Triad's breach of its duties in failing to grout borehole B-4.2, Plaintiffs have incurred damages exceeding $2 million for the clean-up of the inadvertent return, delay of the TP-371 project occasioned by the inadvertent return, and the sealing of borehole B-4.2.

WHEREFORE, the Plaintiffs, EQT Gathering, LLC, and Equitrans, L.P., demand judgment against Defendant, Triad Engineering, Inc. in an amount in excess of the jurisdictional limits of this Court, plus continuing interest and court costs.

**JURY TRIAL DEMANDED**

                                                    Respectfully submitted,

                                                    BURKE CROMER CREMONESE, LLC

Dated: August 7, 2019                  *s/ John B. Cromer*
                                                  John B. Cromer, Esquire
                                                  PA ID # 66773
                                                  jcromer@bccattorneys.com
                                                  BURKE CROMER CREMONESE, LLC
                                                  517 Court Place
                                                  Pittsburgh, PA 15219
                                                  Phone: (412) 904-3360
                                                  Fax: (412) 904-3799
                                                  *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of August, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing Amended Complaint on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first class postage prepaid.

*s/ John B. Cromer*